The plaintiff states in his bill, that the sealed note executed by him to the defendant's testator for $1,694.11, on 30 January, 1850, is the same debt, with the interest thereon, bequeathed to him by the testator; that the testator did not intend by taking a new note for the amount of the principal and interest of the debt to revoke the legacy, and he contends that in law it is not revoked or adeemed. The demurrer admits the facts, and we are called on to decide whether *Page 169 
the plaintiff has deduced the proper legal conclusion from therein.
Upon the authorities there may seem to be some conflict of judicial opinion, but the weight of them is, we think, on the side of the plaintiff, and is supported by reason and principle. In Dingwell v. Askew, 1 Cox., 427, it is stated that previously to the marriage of the testatrix, stock was vested in trustees to her separate use for life, then to the issue of the marriage, afterwards, according to her appointment by will, notwithstanding the marriage; and in default of appointment to the testatrix absolutely. She executed her power, survived her husband, and then took a transfer of the stock from the trustees into her own name, and died without having made any other disposition of it. The question was, whether the transfer was an ademption of the bequest, and it was (189) held by Lord KENYON, then master of the Rolls, that it was not. The case of Blackwell v. Child, 1 Ambl., 260, was in effect as follows: Samuel Child and B. and W. Blackwell were partners in the banking business, under articles, made in the year 1843. S. Child, after reciting in his will that he had reserved to himself by the articles, nine in twelve parts of the profits to arise by banking in his house, at Temple Bar, London, did, in pursuance of the power also reserved thereby, dispose of such nine parts in manner following: — one ninth part to B. Blackwell and W. Blackwell, in addition to the shares to which they were entitled under the articles, as a recompense for the trouble they should incur in carrying on the banking business for the benefit of his wife and children; another ninth part to his wife; three ninths to his eldest son, and the remaining four ninths to his two youngest sons. The articles of 1743 expired after the date of the will, and Child entered into new articles with B. Blackwell and W. Blackwell, at the end of a year afterwards, by which the business was divided into twenty-four parts or shares, and fourteen of them were declared to belong to Child, seven to B. Blackwell, and three to W. Blackwell. There was a provision in the articles of 1743, that if any of the partners died during the partnership under those or any future articles, the shares of the persons so dying should belong to their executors. There were also secret, or what are called side articles entered into by them, but no new ones were made when the parties entered into the last articles. Upon a question whether the second articles were an ademption of Child's will, Lord HARDWICK determined that they were not, observing that although the fund was altered and differently arranged, it was in fact *Page 170 
subsisting at Child's death; and his Lordship said, "that where a person in trade makes a provision out of his share for his family, and afterwards renews the partnership by which perhaps his interest is varied, yet it is not a revocation; if it were, it would occasion great confusion." In Pulsford v. Hunter, 3 Bro. Ch. Cas. 416, W. Richards, by a codicil of Dec. 1779, after giving two small annuities, bequeathed as follows: "this is an account of value now in my possession, and out of which the said yearly sums are to be paid; bank notes (190) to the amount of £ 190; cash £ 10, 10s.; ditto in the bank of Mr. Drummond £ 2,476, 5s., £ 2,676, 15s.; the interest of the remaining part to be applied for the use and education of my grandchildren till they arrive at the age of twenty-one, and the principal to be then equally divided amongst them," c. It appeared that Richards had no cash in possession at his death; but that he was possessed of two bank notes amounting to £ 30; also that Hunter, in January, 1799, and at Richard's request, left with Messrs. Drummond two navy bills, the property of Richards, to the amount of £ 2,462, 5s. 4d., and that in August, 1790, Government discharged the navy bills and interest, with seventeen exchequer bills of £ 100 each, and with £ 921 1s. cash, making a total of £ 2,621, 1s., which exchequer bills remained in the hands of Messrs. Drummond in the name of Hunter, and the £ 921, 1s. placed to his account; that in September, 1780, Hunter drew a draft on the Messrs. Drummond for £ 21, 1s. in favor of the testator which was paid; and he afterwards took out the remainder of the same and bought nine other exchequer bills of £ 100 each, and left them with the Messrs. Drummond in his own name, which made up twenty-six exchequer bills; that afterwards sixteen of the exchequer bills were deposited with the Messrs. Drummond at the testator's request, in his, testator's own name, and the remaining ten bills were paid to Hunter and another person in satisfaction of a debt of £ 1,000; and it appeared that the testator never had any property in the hands of the Messrs. Drummond except as before stated. It was one of the questions, whether as at the time of the bequest the property in the possession of the Messrs. Drummond was navy bills, and had been subsequently altered in the manner before mentioned, the legacy was not adeemed; or whether the grandchildren were entitled to the sixteen exchequer bills remaining in the hands of the Messrs. Drummond at the death of the testator? Lord THURLOW decided in their favor, observing that the question in these cases was, whether the *Page 171 
specification of the thing bequeathed, remained the same at the testator's death as it was at the time of the bequest.
An attentive examination of these, together with other cases on the same subject, will show that the true principle to be extracted from them is, that when the thing bequeathed is annihilated and gone at the death of the testator, or so (191) completely changed at that time that it cannot be identified, then the legacy must fail; but if it remains substantially the same as it was at the time when the will was made, then the legacy is not adeemed: (See Roper on Legacies 238, et seq., where most of the cases are collected, and the principles upon which they were decided pointed out and explained). Let us now apply this principle to the case before us. The bequest of the defendant's testator to his brother the plaintiff, was in effect the whole debt, including the interest, which the plaintiff owed him. It does not merely describe the note by which the debt was secured, but it proceeds to declare: "and I do hereby release him and his heirs from all obligation to me as appears by said note, and all interest accruing on said note." Could any language have been used to express more clearly and fully that the testator intended to forgive his brother the debt which he owed him? Did the subsequent transactions between the parties destroy the debt, or so change it that it could not be known to be the same? If it had been collected by the testator, there is no doubt that the legacy would be lost; but instead of being collected it was only renewed, and renewed only because other creditors of the plaintiff desired a new deed of trust to be executed. It was the same debt, principal and interest, secured by a new note. The new security does not annihilate, but preserves the substance of the thing given, to-wit, the debt. Such certainly appears to be the opinion of Lord HARDWICK, where he said in the case of Blackwell v. Child, before cited, "I think it is a specific legacy of quantity bequeathed out of a certain body; and if the body be subsisting at the death of the testator, the legacy shall be paid out of it. It was said to be like the novation of a debt, which does not destroy the legacy of the debt." Novation, says Bailey in his Dictionary, is a term in the civil law signifying "an entering into a new obligation to take off a former."
We think that we have succeeded in showing that both authority and principle are on the side of the plaintiff, which entitled him to have the demurrer overruled.
PER CURIAM. Demurrer overruled. *Page 172 
 Cited: Hyman v. Devereux, 63 N.C. 627; Cole v. Covington, 86 N.C. 299;Starbuck v. Starbuck, 93 N.C. 185.
(192)